IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY,<br><br>               Plaintiff,<br><br>   v.<br><br>ST. PAUL SURPLUS LINES INSURANCE COMPANY, LIBERTY SURPLUS INSURANCE CORPORATION, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, NORTH AMERICAN CAPACITY INSURANCE COMPANY, and DOES 1 through 100, inclusive,<br><br>             Defendants. | Case No. 13-cv-03499 SC<br><br>ORDER ON CROSS MOTIONS FOR <u>SUMMARY JUDGMENT</u> |

## I. **INTRODUCTION**

This matter concerns an action by Navigators Specialty Insurance Company ("Navigators") against several insurance carriers, including defendant North American Capacity Insurance Company ("NAC"), for contribution of defense fees incurred in the defense of Navigator's named insured, McDevitt & McDevitt Construction Corporation ("McDevitt"), for claims arising from a construction project in Petaluma, California. Now before the Court are Navigators' and NAC's cross motions for summary judgment as to

1 NAC's duty to defend McDevitt under California law. Both motions
2 are fully briefed,[1] and the Court finds them suitable for
3 disposition without oral argument pursuant to Civil Local Rule 7-
4 1(b). The essential facts are undisputed.

5 Because McDevitt is not an additional insured to the NAC
6 insurance policy, Navigators cannot prove that NAC had a duty to
7 defend McDevitt. Navigators therefore has no right to
8 reimbursement of defense fees and costs from NAC. Accordingly,
9 Navigators' partial motion for summary judgment as to NAC's duty to
10 defend is DENIED and NAC's motion for summary judgment is GRANTED.

## II. BACKGROUND

This case involves causes of action for declaratory relief, equitable contribution, and equitable subrogation arising out of NAC's alleged breach of its duty to defend and indemnify Navigators' named insured, McDevitt, against two underlying and consolidated actions for alleged construction defects ("Underlying Actions"). Navigators alleges that NAC had a duty to defend McDevitt as an additional insured under F&M Steel, Inc.'s ("F&M") insurance policy with NAC ("NAC Policy").

### A. The Underlying Actions

The Underlying Actions arose out of alleged defects in the design and construction of a commercial condominium complex located at 3820 Cypress Drive in Petaluma, California ("Project"). McDevitt was the general contractor for the Project, and F&M

---

[1] ECF Nos. 90 ("Navigators' Mot."); 92 ("NAC's Opp'n"); 96 ("Navigators' Reply"); 93 ("NAC's Mot."); 99 ("Navigators' Opp'n"); 101 ("NAC's Reply").

2

1 subcontracted with McDevitt to provide "a complete structural steel
2 package" for the Project ("Subcontract"). Joint Stipulation of
3 Facts ("JSF") ¶ 3. F&M's original scope of work under the
4 subcontract was completed in June of 2005. In addition, F&M
5 performed "EXTRA" work on the Project in November 2005, consisting
6 of the installation of a lavatory sink bracket in unit four of the
7 condominium complex. Id. ¶ 5.
8     In the first of the Underlying Actions, a condominium
9 association sought damages from McDevitt and F&M for alleged
10 construction defects to the Project's common areas. 3820 Cypress
11 Condo Assoc. v. MMM Enterprises, LLC, et al., Sonoma County
12 Superior Court Case No. SCV248794 ("3820 Cypress Action").
13 Navigators defended McDevitt in the 3820 Cypress Action, and NAC
14 defended F&M.
15     In the second of the Underlying Actions, the owners of units
16 three, nine, ten, and eleven of the Project sought damages from
17 McDevitt and F&M for alleged construction defects to those units.
18 Point Reyes Bird Observatory, et al. v. MMM Enterprises, LLC, et
19 al., Sonoma County Superior Court Case No. SCV250623 ("PRBO
20 Action"). Again, Navigators defended McDevitt, and NAC defended
21 F&M.
22     On February 4, 2013, the 3820 Cypress Action and the PRBO
23 Action were consolidated (collectively "Underlying Actions").
24     Navigators tendered the defense of McDevitt for the Underlying
25 Actions to NAC, asserting that Navigators was entitled to NAC's
26 participation in the defense and indemnity of McDevitt because
27 McDevitt was allegedly an additional insured under the NAC Policy.
28 In response, NAC disclaimed coverage by letter, asserting that

3

1 McDevitt was not an additional insured under F&M's policy.

### B. The Policies

F&M's Subcontract with McDevitt required F&M to "obtain a comprehensive policy of public liability insurance . . . includ[ing] coverage for liability assumed under contract or agreement and completed operations coverage . . ." JSF, Ex. 1 at NACC000002. The Subcontract further provided that the

> subcontractor shall name [McDevitt] . . . as additional insureds. The following language will be included by endorsement . . . : "It is further agreed that such insurance as is afforded by this policy for the benefit of the above additional insured(s) shall be PRIMARY insurance as respects any claims . . . arising out of the named insured's operations . . ."

Id.

The NAC Policy provided F&M commercial general liability coverage for bodily injury and property damage during the policy period of October 1, 2005 to October 1, 2006 only if

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>
> (2) The "bodily injury" or "property damage" occurs during the policy period.

JSF, Ex. 11 at NAC000045.

Pursuant to the Subcontract, F&M also obtained an additional insured endorsement modifying the NAC Policy so as to include

> [a]ny person or organization to which you are obligated by virtue of written contract to provide insurance such as is afforded by this policy, <u>but only with respect to</u> (1) occurrences taking place after such written contract has been executed and (2) <u>occurrences resulting from work performed by you during the policy period</u>, or occurrences resulting from the conduct of your business during the policy period.[2]

---

[2] The only specially defined terms are the words "you" -- defined as the named insured, F&M (JSF, Ex. 11 at NAC000052) -- and

4

JSF ¶ 17, Ex. 12 ("AI Endorsement") (emphasis added). Navigators claims that McDevitt qualified as an additional insured under this provision. NAC disagrees, arguing that the work performed by F&M that allegedly caused the occurrences giving rise to the Underlying Actions -- that is, the property damage to the common areas and units three, nine, ten, and eleven of the Project -- occurred prior to the policy period.

### C. Litigation History

Navigators filed a Third Amended Complaint for declaratory relief regarding defendants' duty to defend and indemnify McDevitt in the Underlying Actions, equitable contribution regarding defense costs associated with the Underlying Actions, and equitable subrogation, naming NAC and three other insurance companies as defendants. ECF No. 55 ("Compl."). The defendant insurance companies insured McDevitt's subcontractors. The subcontractors were defendants -- along with McDevitt -- in the Underlying Actions. Navigators argues that it is entitled to contribution from the defendant insurance companies for the defense costs and indemnity it incurred in the Underlying Actions on behalf of McDevitt because McDevitt was allegedly an additional insured under the policies issued by the defendants to McDevitt's subcontractors.

On April 24, 2015, Navigators filed a motion for summary judgment as to NAC's duty to defend McDevitt in the Underlying Actions. NAC filed a cross motion for summary judgment on May 8, 2008. Both motions are now before the Court.

---

"occurrence" -- defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" (Id. at NAC000063).

5

**III. LEGAL STANDARD**

    **A.    Summary Judgment**

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment should be entered against a party that fails to make a showing sufficient to establish the existence of an element essential to its case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

    **B.    Insurance Contract Interpretation**

Where the underlying facts are undisputed, interpretation of an insurance policy is a question of law. Merced Mut. Ins. Co. v. Mendez, 213 Cal. App. 3d 41, 45 (1989); see also Legacy Vulcan Corp. v. Super. Ct., 185 C.A. 4th 667, 688 (2010) ("Contract interpretation, including the resolution of any ambiguity, is solely a judicial function, unless interpretation turns on credibility of extrinsic evidence.").

California courts follow four basic rules of construction when interpreting an insurance policy:

    (a) Unambiguous policy terms are given their "plain meaning" in the "context" of the policy and of the way in which they are used.

    (b) In the absence of a plain meaning, that is, where the terms are in fact ambiguous, they are construed so as to give effect to the insured's "objectively reasonable expectations."

    (c) If the previous rule fails to resolve the ambiguity, the terms are construed against the insurer . . .

    (d) Even if unambiguous, exclusions from coverage must be "conspicuous, plain, and clear" to be enforceable.

2 Witkin, Summary of Cal. Law 10th (2005), Insurance, § 48 (internal citations omitted); see also Legacy Vulcan Corp., 185 C.A. 4th at 688 (describing the rules of policy interpretation).

### C. Actions to Obtain Contribution from a Coinsurer

In an action by an insurer to obtain contribution from a coinsurer, the burden is on the insurer who paid the loss to show that a potential coverage obligation arose or existed under the coinsurer's policy. See Safeco Ins. Co. of Am. v. Super. Ct., 140 CA 4th 874, 879 (2006). The plaintiff meets its burden of proof when it makes a prima facie showing of a potential for coverage under the coinsurer's liability insurance policy. Id. at 881. The burden then shifts to the defendant to prove the absence of coverage. Id.

### IV. DISCUSSION

In order for Navigators to make a prima facie showing of a potential for coverage under NAC's Policy, it must first show that McDevitt qualifies as an additional insured. The schedule of the AI Endorsement in the NAC Policy sets out three requirements.

    First, the additional insured must be a "person or organization

to which [F&M is] obligated by virtue of a written contract to provide insurance." AI Endorsement at NAC000050. The parties do not dispute that F&M's subcontract with McDevitt required F&M to name McDevitt as an additional insured.

Second, the AI Endorsement specifies that a party is covered as an additional insured "only with respect to . . . occurrences taking place after such written contract has been executed." Id. The parties do not dispute that the occurrences at issue in the Underlying Actions took place after the Subcontract with McDevitt was executed.

Third, the AI Endorsement states that a party qualifies as an additional insured only with respect to "occurrences resulting from work performed by [F&M] during the policy period, or occurrences resulting from the conduct of [F&M's] business during the policy period." Id. It is undisputed that the liabilities at issue in the Underlying Actions consisted of damage to the Project's common areas and units three, nine, ten, and eleven. It is also undisputed that F&M completed its work on the common areas and units three, nine, ten, and eleven by June 2005, several months prior to the start of the NAC Policy's coverage period. In fact, the only work that was completed on the Project by F&M during the policy period was the installation of a sink bracket in unit four in November 2005. F&M's work on the sink bracket, however, did not cause the property damage in the Underlying Actions. Nevertheless, Navigators argues that because some of F&M's work under the Subcontract (the installation of the sink bracket in unit four) was completed during the policy period, all of F&M's work under the Subcontract (including its work on the common areas and units

8

three, nine, ten, and eleven) should be considered within the policy period. The parties' cross motions for summary judgment on NAC's duty to defend therefore turn on the Court's construction of the phrase "work [and business conduct] performed by [F&M] during the policy period," and whether that construction encompasses F&M's work on the sink bracket in unit four.

In interpreting the AI Endorsement, the Court's first task is to determine if the language in question is ambiguous. Navigators argues that the language is "patently ambiguous" because it allegedly differs from standard additional insured endorsements which are "commonly understood to provide coverage to the additional insured for property damage . . . arising out of the named insured's completed operations." Navigators' Mot. at 17-18. If the language of the AI Endorsement is clear and explicit, however, the fact that it differs from "standard" additional insured endorsements is immaterial. See Bank of the W. v. Super. Ct., 2 Cal. 4th 1254, 1264 (1992) ("If contractual language is clear and explicit, it governs."); see also Waller v. Truck Ins. Exchange, Cal. 4th 1, 18 (1995) (holding that courts should "not strain to create ambiguity where none exists"). For the reasons below, the Court finds the phrase "occurrences resulting from work performed by you during the policy period, or occurrences resulting from the conduct of your business during the policy period" to be clear and explicit.

"Occurrence" is specifically defined in the NAC Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." JSF, Ex. 11 at NAC000063. Here, occurrence refers to the property damage

1 allegedly caused by construction defects to the common areas and
2 units three, nine, ten, and eleven of the Project.
3   The Court finds that the phrases "resulting from work" and
4 "resulting from the conduct of your business" mean that the
5 "occurrence" must have been caused by F&M's "work" or "conduct."
6 "Work" is not specifically defined by the NAC Policy.  Using the
7 plain meaning of the word in the context of the AI Endorsement
8 Schedule, a layman would understand "work" to refer to F&M's
9 provision of services and materials under the Subcontract.  The
10 dictionary definition of "work" reinforces this interpretation,
11 defining "work" as the "[p]hysical and mental exertion to attain an
12 end, esp. as controlled by and for the benefit of an employer."
13 Black's Law Dictionary 1635 (8th ed. 2004).  Thus, in the context
14 of the AI Endorsement, "work" means F&M's "physical and mental
15 exertion" on the Project pursuant to the Subcontract with McDevitt
16 that resulted in the "occurrence."  The Court finds that "conduct
17 of your business" is broader than "work" and encompasses all other
18 business activities in addition to the specific "physical and
19 mental exertion" that F&M performed under the Subcontract.
20   "During the policy period" modifies "work" and "conduct of
21 your business."  Specifically, the "physical and mental exertion"
22 under the Subcontract or other business "conduct" that caused the
23 "occurrence" must have been performed during the policy period --
24 specifically, between October 1, 2005 and October 1, 2006.  Here,
25 the "physical and mental exertion" that caused the property damage
26 to the common areas and units three, nine, ten, and eleven of the
27 Project was F&M's provision of the structural steel package, which
28

10

was completed months before the policy period began.[3]  Even if the Court were to adopt the broadest possible definition of "conduct of your business," Navigators does not point to any conduct <u>during the policy period</u> that could have contributed to the property damage in the Underlying Actions.  Thus, because there is no evidence that F&M's work or business conduct during the policy period caused the occurrence that gave rise to the liabilities in the Underlying Actions, McDevitt is not an additional insured under the NAC Policy.  Because McDevitt does not qualify as an additional insured, Navigators cannot show a potential for coverage under the NAC Policy.

    Navigators asks the Court to interpret the word "work" to include "the entirety of the work F&M performed under the subcontract with McDevitt."[4]  Navigators' Mot. at 12.  In other words, it urges the Court to read the AI Endorsement schedule as if it said, "occurrences resulting from work, any part of which was completed during the policy period."[5]  Navigators' proposed interpretation, however, is contrary to the plain meaning of the clear and explicit language of the AI Endorsement schedule as it was actually written.[6]  See <u>Cal. Dairies Inc. v. RSUI Indem. Co.</u>,

---

[3] Navigators does not claim that the "EXTRA" work performed in November 2005 on the sink bracket in unit four contributed to the property damage in the Underlying Actions.  Even if it did, there is no evidence to support such a claim.

[4] In support of its proposed interpretation, Navigators cites without explanation <u>Roger H. Prouix v. Crest-Liners, Inc.</u>, 98 Cal. App. 4th 182, 196-97 (2002).  <u>Prouix</u>, however, does not provide any support for Navigators' proposed interpretation.

[5] At the very least, Navigators' proposed interpretation would require the Court to arbitrarily replace the phrase "during the policy period" with the phrase "any time under the contract."

[6] Further, even if the Court were to adopt Navigators' proposed interpretation, McDevitt would not necessarily qualify as an additional insured.  The work that was performed in November 2005

11

1  617 F. Supp. 2d 1023, 1030 n.3 (E.D. Cal. 2009) (holding that
2  undefined insurance policy terms should be interpreted as laymen
3  would read them);[7] AIU Ins. Co. v. Super. Ct., 51 Cal. 3d 807, 822
4  (1990) (holding that "if the meaning a layperson would ascribe to
5  contract language is not ambiguous," then the court applies that
6  meaning).

7      Navigators also argues that because the disputed language
8  allegedly limits the scope of coverage, it should be interpreted
9  narrowly against the insurer.  While it is true that exclusionary
10 clauses should be interpreted narrowly against the insurer,
11 Navigators' argument presupposes that McDevitt is an additional
12 insured and that the disputed language merely changes the scope of
13 the coverage afforded.  The disputed language, however, does not
14 change the scope of coverage; rather, it limits the status of
15 additional insureds to certain liabilities.  California courts have
16 rejected arguments claiming that similar language provided coverage
17 while merely changing the scope of the coverage.  See Gemini Ins.

---

was "EXTRA" and separate from the scope of work under the Subcontract.  "Extra work" in construction law, is "work not required under the contract; something done or furnished in addition to the contract's requirements; work entirely outside and independent of the contract and not contemplated by it."  Black's Law Dictionary 1635 (8th ed. 2004).  Thus, it is questionable whether F&M performed any work at all under the Subcontract during the policy period.

[7] "Work" was not a specifically defined term in the NAC Policy. Although the NAC Policy defines the term "your work", that specifically defined term is not used in the AI Endorsement. Moreover, the AI Endorsement does not place quotation marks around the word "work" to indicate that it was specifically defined. See JSF, Ex. 11 at NAC 000052 ("[W]ords and phrases that appear in quotation marks have special meaning.").  Accordingly, the Court declines to apply the definition of "your work" to the word "work" and applies its plain meaning instead.  Scott v. Cont'l Ins. Co., 44 Cal. App. 4th 24, 28-29 (1996) ("Words in an insurance policy, unless given special meanings by the policy itself, must be understood in their ordinary sense.").

Co. v. Delos Ins. Co., 211 Cal. App. 4th 719, 722-23 (2012); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Nationwide Ins. Co., 69 Cal. App. 4th 709, 720 (1990). Regardless, even interpreted narrowly, the terms of the AI Endorsement clearly require the property damage at issue in the Underlying Actions to have been caused by work performed during the policy period. Navigators' proposed alternative interpretations are not a "narrow" reading of the language in the AI Endorsement; they are an unreasonable reading of language that is otherwise clear and explicit.

Next, Navigators argues that because NAC defended its named insured, F&M, in the Underlying Actions, it follows that NAC had a duty to defend its additional insured, McDevitt. Not so. Although it is true that an insurer's duty to defend an additional insured is as broad as its duty to defend its named insured (see Presley Homes, Inc. v. Am. States Ins. Co., 90 Cal. App. 4th 571, 574 (2001)), for the reasons provided above, McDevitt is not an additional insured with respect to the Underlying Actions. Regardless, NAC's decision to defend F&M is irrelevant as to whether NAC has a duty to defend McDevitt.

Finally, Navigators argues that because NAC allegedly never responded to its tender of the PRBO Action, NAC waived its right to disclaim coverage. NAC responded to Navigators' tender of the PBRO Action on August 27, 2012 by forwarding a copy of NAC's prior denial of the 2830 Cypress Action. JSF ¶ 32. Just because NAC's response to the PRBO Action was the same as its response to the 2830 Cypress Action, however, does not mean that NAC intentionally relinquished its right to deny coverage in the PBRO Action. On the contrary, even if NAC could have made its position more explicit,

NAC's August 27 response communicated its intention to deny coverage in the PRBO Action on the same grounds that it denied coverage in the 2830 Cypress Action.

## V. **CONCLUSION**

The undisputed facts show that McDevitt was not an additional insured under the terms of the AI Endorsement because McDevitt's liability to the plaintiff in the Underlying Actions was not the result of an "occurrence" caused by F&M's work performed during the period of coverage provided by the NAC Policy. As a result, Navigators cannot show that a potential coverage obligation arose or existed under the NAC Policy. Accordingly, NAC did not have a duty to defend McDevitt, and Navigators has no right to reimbursement.

For the reasons given herein, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

Dated: June 17, 2015

UNITED STATES DISTRICT JUDGE

14