IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>   v.<br><br>ST. PAUL SURPLUS LINES INSURANCE COMPANY; LIBERTY SURPLUS INSURANCE CORPORATION; et al.,<br><br>        Defendants. | Case No. 13-cv-03499-SC<br><br>ORDER GRANTING DEFENDANT ST. PAUL'S MOTION FOR SUMMARY JUDGMENT |

Now before the Court is Defendant St. Paul Surplus Lines Insurance Company's ("St. Paul") motion for summary judgment.[1] ECF No. 69 ("Mot."). The motion is fully briefed,[2] and the Court finds it suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b). The undisputed facts establish that St. Paul's underwriter and agent -- Crouse and Associates ("Crouse") -- did

---

[1] The original motion for summary judgment was filed jointly by Defendants St. Paul and Travelers Property Casualty Company of America ("Travelers"). By virtue of Navigators' dismissal of Travelers (ECF No. 89), the portion of the motion pertaining to Travelers is no longer before the Court.

[2] There have been multiple rounds of briefing on this motion. ECF Nos. 69 ("Mot."); 79 ("Opp'n"); 80 ("Reply"); 102 ("Pl. First Suppl. Br."); 105 ("Def. First Suppl. Br."); 112 ("Pl. Second Suppl. Br."); 113 ("Def. Second Suppl. Br.").

not have the authority to delegate its agency powers to insurance broker California Financial Insurance Services ("California Financial"). As a result, the Court finds that Navigator's named insured -- McDevitt & McDevitt ("McDevitt") -- was not an additional insured with respect to the St. Paul insurance policy held by Sunrise Windows ("Sunrise"). St. Paul therefore did not have a duty to defend or indemnify McDevitt, and Navigators is not entitled to declaratory relief, equitable contribution, or equitable subrogation as a matter of law. Accordingly, St. Paul's motion for summary judgment is GRANTED.

## I.  BACKGROUND AND LITIGATION HISTORY

The details of this case have been set out in multiple orders, are well known to the parties, and therefore will not be repeated in their entirety here. ECF Nos. 36, 86, 95, 100, 108. The facts pertinent to the instant motion are as follows:

This is an insurance dispute arising from two underlying construction defect lawsuits (known as the "3820 Cypress Action" and the "PRBO Action"). Both lawsuits allege that a building in Petaluma, California contains construction defects, and both lawsuits have been consolidated in state court (collectively "the Underlying Actions"). McDevitt, the general contractor for the building, was insured by Navigators. St. Paul -- pursuant to a policy issued by its underwriter and agent, Crouse -- insured Sunrise, a subcontractor responsible for windows. This case relates to the policies St. Paul issued to Sunrise (the "Sunrise Policies").

Navigators alleges that it is entitled to declaratory relief,

equitable contribution, and equitable subrogation arising out of St. Paul's alleged breach of its duty to defend and indemnify Navigators' named insured, McDevitt, against the Underlying Actions. Navigators claims that St. Paul had a duty to defend McDevitt because McDevitt is allegedly listed as an additional insured on an additional insured endorsement to the Sunrise Policies. Importantly, California Financial, Sunrise's insurance broker, is the one that allegedly issued the additional insured endorsement. See Opp'n at 6 ("Navigators argues that the broker, California Financial, issued the endorsement with either actual or ostensible authority . . . ."). Viewing the evidence in the light most favorably to Navigators, St. Paul's motion for summary judgment turns on whether, under the law of agency in California, California Financial had the authority to issue the additional insured endorsement on St. Paul's behalf. The Court ordered additional discovery and two rounds of supplemental briefing on this issue.

The parties' first set of supplemental briefs focused on whether California Financial was authorized by St. Paul's agent, Crouse, to issue the additional insured endorsement -- in other words, whether California Financial was St. Paul's authorized sub-agent. Navigators' first supplemental brief focuses almost exclusively on a conversation between representatives of Crouse and California Financial during which Crouse allegedly gave California Financial permission to issue additional insured endorsements on St. Paul's behalf. However, because Navigators failed to address whether Crouse had the authority to delegate its agency powers to California Financial in the first place, a second round of

1  supplemental briefing was ordered on that particular issue.  ECF
2  No. 109.  The parties' briefs have been reviewed, and the Court now
3  finds St. Paul's motion suitable for disposition.

## II. LEGAL STANDARD

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Summary judgment should be entered against a party that fails to make a showing sufficient to establish the existence of an element essential to its case.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## III. DISCUSSION

The central issue in this case -- whether St. Paul is bound by an alleged additional insured endorsement naming McDevitt as an additional insured -- is a matter of California agency law.  The principal in this case is St. Paul.  See Restatement (Second) of Agency § 1 (1958) ("The one for whom action is to be taken is the principal.").  There is no dispute that Crouse is St. Paul's

authorized agent and that it was empowered to issue additional insured endorsements on St. Paul's behalf. See Mot. at 9. Navigators claims that Crouse delegated its authority to issue additional insured endorsements to California Financial. See Pl. First Suppl. Br. at 1-5. In other words, Navigators is arguing that California Financial was St. Paul's authorized sub-agent. See id. § 5 ("A subagent is a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal . . . .").

Section 2349 of the California Civil Code governs an agent's ability to delegate its powers to a sub-agent:

> An agent, <u>unless specially forbidden by his principal to do so</u>, can delegate his powers to another person in any of the following cases, <u>and in no others</u>:
>
> 1. When the act to be done is purely mechanical;
>
> 2. When it is such as the agent cannot himself, and the sub-agent can lawfully perform;
>
> 3. When it is the usage of the place to delegate such powers; or,
>
> 4. When such delegation is specially authorized by the principal.

Cal. Civ. Code § 2349 (emphasis added). Navigators argues that this case falls under the third category -- that it was "the usage of the place to delegate" the power to issue additional insured endorsements to a sub-agent. Id.

The phrase "usage of the place to delegate such powers" in Section 2349 refers to situations where "[t]he authority to appoint a subagent may be inferred from the employment of the agent in a position of general authority." Trane Co. v. Gilbert, 267 Cal. App. 2d 720, 726-27 (1968). Specifically, it refers to situations

5

where, "in view of business custom and usage . . . [the granting of agency authority to an agent] ordinarily includes authority to appoint other agents." Id. (citations omitted) (emphasis added). Thus, in order to meet the requirements of Section 2349, Navigators would need to provide evidence that it is the custom and usage of the insurance industry for insurance companies (such as St. Paul) to grant authority to insurance underwriters (such as Crouse) to appoint insurance brokers (such as California Financial) as sub-agents. Navigators does not attempt to make that argument. Even if it had, it is clearly not the custom and usage. See Cal. Ins. Code §§ 33, 1623 (defining an "insurance broker" as a "person who, for compensation and on behalf of another person, transacts insurance other than life with, but not on behalf of, an insurer.") (emphasis added); Marsh & McLennan of Calif., Inc. v. City of Los Angeles, 62 Cal. App. 3d 108, 118 (1976) (holding that insurance brokers are not agents of insurance companies); Carlton v. St. Paul Mercury Ins. Co., 30 Cal. App. 4th 1450, 1457 (1994) (holding that a broker acts only on behalf of the client or insured and not the insurer); Rios v. Scottsdale Insurance Company, 119 Cal. App. 4th 1020, 1029 (2004) (holding that a broker has no authority to alter the terms of coverage or to present a policy other than that offered by the insurer); Schultz Steel Co. v. Hartford Ace. & Indem. Co., 187 Cal. App. 3d 513, 522-23 (1986) (holding that a broker's misrepresentation as to the scope of an insurance policy cannot be imputed to the insurer).

Instead of arguing that it is the custom and usage in the insurance industry to appoint insurance brokers as subagents, Navigators claims that "it was the custom and practice by and

between California Financial and Crouse to so delegate."[3]  Pl. Second Suppl. Br. at 3 (emphasis added).  The custom and practice between California Financial and Crouse would be relevant if Navigators was attempting to establish that California Financial had the authority to act as Crouse's agent.  See generally, Restatement (Third) Of Agency § 2.01 (2006) (explaining how actual authority can be implied conferred by a principal based on prior interactions between the principal and the agent).  A custom and practice between California Financial and Crouse, however, does nothing to establish California Financial's authority to act on behalf of St. Paul.[4]  Thus, this case does not fall within one of the four categories set out in Section 2349.

Even if this case fell within one of the four categories of cases set out in Section 2349, Crouse still would not have had the authority to appoint California Financial as a sub-agent because Crouse was "specially forbidden by [St. Paul] to do so."  Cal. Civ. Code § 2349.  St. Paul's letter of authority to Crouse specifically and unambiguously forbids Crouse from delegating its agency powers.

---

[3] As evidence, Navigators points to the deposition of Linda Friedlin, an officer at California Financial.  Ms. Friedlin testified that a Crouse employee told her that California Financial could issue additional insured endorsements on St. Paul's behalf because requests for additional insured endorsements were "backing up."  Id.

[4] Navigators' analysis is crippled early in its supplemental brief by its erroneous designation of Crouse as the principal and California Financial as the agent.  Pl. Second Suppl. Br. at 1. This case has to do with whether St. Paul is bound by the additional insured endorsement, not Crouse.  Thus, St. Paul is the principal, and the question is whether California Financial acted as St. Paul's authorized sub-agent.  At other points in its brief, Navigators also seems to assume that the agent of one's agent is necessarily one's sub-agent.  Not so.  In order to bind the principal, the delegation of authority to a purported sub-agent must comply with section 2349.

ECF No. 105-1, Ex. A at 2 ("Without the prior express written approval of [St. Paul], [Crouse] shall not: . . . Delegate or assign any of the rights or powers conferred under this Letter of Authority to any other individual or entity.").

Navigators also argues that "[a]n ostensible agency exists when evidence shows a principal -- Crouse -- has allowed a third person -- McDevitt -- to believe the agent -- California Financial -- acted with its authority." Pl. Suppl. Br. at 1. In making that argument, Navigators is essentially claiming that Crouse, as the purported principal, is bound by the additional insured endorsement. Even if that were true, Crouse is not a party to this suit, and Navigators' argument is immaterial as to whether St. Paul was bound by the additional insured endorsement. If Navigators' meant to argue that, as St. Paul's agent, Crouse had the ostensible authority to appoint a sub-agent, Navigators would be wrong. As already discussed, the ability to delegate agency powers to sub-agents is governed by Section 2349, and those requirements have not been met. Cal. Civ. Code § 2349; see also J.L. v. Children's Institute, Inc., 177 Cal. App. 4th 388, 403-04 (2009) (holding that ostensible agency can only be established based on "the statements or acts of the principal") (emphasis added); Chicago Title Ins. Co. v. AMZ Ins. Services, Inc., 188 Cal. App. 4th 401, 426-27 (2010) (holding that for ostensible agency to arise from the silence of the principal, the principal must know that the ostensible agent is holding himself out as having agency authority).

### IV. CONCLUSION

Based on the forgoing, McDevitt is not an additional insured

1  under the Sunrise Policies; therefore, there is no potential for
2  coverage by St. Paul for the Underlying Actions against McDevitt.
3  Because there is no potential for coverage, St. Paul had no duty to
4  defend or indemnify McDevitt.  Without a duty to defend or
5  indemnify, as a matter of law, Navigators is not entitled to any
6  relief on its causes of action against St. Paul.  Accordingly, St.
7  Paul's motion for summary judgment is GRANTED.

        IT IS SO ORDERED.

        Dated: July 9, 2015              
                                         _____
                                         UNITED STATES DISTRICT JUDGE